■ In the Matter of THOMAS L. ARCARESE, Respondent, v MARY A. MONACHINO, Appellant.—Judgment unanimously affirmed, without costs. Memorandum: The parties to this custody proceeding were married in 1968

and their daughter, Ann Marie, was born in 1969. In 1973 petitioner and respondent separated and by written agreement custody was granted to the mother. That agreement was incorporated in a divorce decree obtained in 1974. Both parties subsequently remarried. Ann Marie lived with her mother until early 1975 when she was taken to live with the father for several weeks, later returned to the mother, and in May, 1975 the mother again delivered Ann Marie to the father where she has lived continuously since that time. The mother made only sporadic visits or contacts with her daughter after May, 1975. The father then brought this proceeding and Trial Term awarded him permanent custody of Ann Marie with visitation rights to the mother. It is familiar law that in a proceeding involving two natural parents, custody is to be determined solely by what is in the best interests of the child, and the disposition of the trial court should not be reversed in the absence of manifest error or abuse of discretion. Moreover, when the child has been living with one parent for a long period of time and the parties have previously agreed upon custody in one parent, that custody should be continued unless it is demonstrated that that parent is unfit or at least less fit than the noncustodial parent (Opferbeck v Opferbeck, 57 AD2d 1074; Papernik v Papernik, 55 AD2d 846; and, see, authorities cited therein). We find a substantial change of circumstances justifying the trial court's decision to award custody to the father in this case, particularly in view of the lengthy uninterrupted period of custody he has had since May, 1975. Respondent's second husband is part of the Federal Witness Relocation Program. The rules and regulations of that program require that he and his wife (and Ann Marie, if she lives with them) be concealed, change their identities, avoid contact with their families and relocate in another area of the country. The prospects that Ann Marie could enjoy a stable and secure childhood or reasonable visitation by her father under such circumstances are uncertain at best. For example, when respondent and her second husband went into protective custody in early 1975, they lived in a jail apartment with Ann Marie. Shortly afterwards, Ann Marie was delivered to petitioner by the Sheriff without prior notice. After a few weeks respondent took Ann Marie back with her and her husband. When they were advised by the authorities in May, 1975 that they would have to move about the country, respondent again delivered Ann Marie to the petitioner. The infant has remained with her father since that time and the child's best interests require that she remain with him. The mother requests a remittitur because the Trial Justice failed to make findings. This action presents a single issue, however, and the parties had full opportunity to develop their proof. While the trial court should have made findings as required by CPLR 4213 (subd [b]), we may do so without the necessity of a remittitur or a new trial (Good v Good, 37 AD2d 682; Phelps v State Mut. Life Assur. Co., 10 AD2d 60). Nor do we find any error in the failure of the Trial Justice to disqualify himself in this case. He offered to do so because of past contacts with other members of the Monachino family, and respondent's counsel, after conferring with his client, waived any objection. She may not raise the issue now after consenting that the Justice hear the case. (Appeal from judgment of Monroe Supreme Court—custody.) Present—Simons, J. P., Dillon, Hancock, Denman and Goldman, JJ.